No. 3324

Second Circuit

———

LEE-BAKER DRY GOODS CO., INC., v. LA. TAX COMMISSION ET AL.

———

(March 12, 1929.  Opinion and Decree.)
(April 5, 1929.  Rehearing Refused.)

———

Barnette and Roberts, of Shreveport, attorneys for plaintiff, appellant.

Wm. M. Phillips and George T. McSween, of Shreveport, attorneys for defendants, appellees.

### STATEMENT OF THE CASE.

REYNOLDS, J. Plaintiff, Lee-Baker Dry Goods Company, Incorporated, sued the Louisiana Tax Commission, the Police Jury of Caddo Parish, John W. A. Jeter as assessor, and T. R. Hughes as the sheriff and ex-officio collector of taxes of the parish of Caddo, to compel a reduction in the valuation placed upon its property for purposes of taxation for the year 1927 and to restrain the sale of its property pendente lite. On trial there was judgment granting it only part of the relief sought and rejecting its demand as to the rest, and it appealed. In this court the defendants have filed an answer to the appeal praying that the judgment be amended by restoring the valuation fixed by the taxing authorities where changed by the judgment and for attorney's fees in the amount of ten per cent on the amount of taxes owing.

### OPINION.

Plaintiff was engaged in the business of selling merchandise, principally dry goods, at wholesale in the city of Shreveport, Louisiana, and duly returned its property for taxation for the year 1927, valuing its stock of merchandise at $146,-710.72 and its furniture and fixtures at $5,000.00. This valuation was approved by the assessor of Caddo parish, but was ordered increased by the Tax Commission, the merchandise to $155,800.00 and the furniture and fixtures to $8,500. Plaintiff protested the increase, both to the Tax Commission and the Police Jury sitting as a board of reviewers. The latter recommended that plaintiff's valuations be permitted to stand. The Tax Commission declined to recede from its order. Thereupon this suit followed.

It is provided in section 1 of article X of the Constitution that—

"No property shall be assessed for more than its actual cash value, and all taxpayers shall have the right of testing the correctness of their assessments before the courts at the domicile of the assessing authority."

As to the merchandise, plaintiff's rendition is 80% of the value of the average amount of goods it had in stock throughout the year 1926, and was arrived at by averaging the value of merchandise on hand January 1, 1926, and December 1, 1926, according to inventories taken on those dates.

The stock on hand January 1, 1926, inventoried $181,762.50, and that on December 31, 1926, $185,014.21. The average of these amounts is $183,388.39, and 80% of this last is $146,710.72.

As to the furniture and fixtures, plaintiff's rendition is 80% of the original value of that also.

The rule for determining the actual cash value of property for the purposes of taxation is fixed by statute. It is provided in Act No. 170 of 1898, section 91:

"That the following rules for the taxation of persons and property are hereby established:

\*   \*   \*

"The words 'actual cash value' or 'actual cash valuation,' shall be held to mean a price that any piece of real estate or personal or movable property would sell for cash, in the ordinary course of business, free from all incumbrances, otherwise than by forced sale."

The only evidence in the record as to the value of plaintiff's property is that offered by the plaintiff itself, namely, the testimony of J. E. Baker, J. M. Lee and C. H. Thurmond.

J. M. Lee testified that he was president of the plaintiff company and that the character of business conducted by it was dealer in dry goods, notions and kindred lines at wholesale. He defined "kindred lines" as knit goods, sweaters, hosiery, and the like. He said that he had been in that line of business practically all his life, and—

"Q. When you took an inventory of this stock of goods, how was it taken?
"A. At cost price.
"Q. What do you mean by cost price?
"A. Just what is paid the manufacturers for them."

He said the inventory of January 1, 1926, showing merchandise of a value of $181,762.50 on hand on that date and that of December 31, 1926, showing goods then on hand of the value of $185,014.21, were correct, and that the average of these two amounts represented the value of the average stock on hand throughout the year 1926, and that the merchandise was rendered for taxation for the year 1927 at 80% of this average value.

"Q. Now in arriving at the value of your stock of merchandise, do you think that it was actually worth more than the amount that you assessed it for, or do you think that the actual cash value was at least twenty per cent below the inventory value?

"A. I think the actual value was below the twenty per cent.

"Q. Do you think that your stock of merchandise could have been sold for any more than you returned it for the purpose of taxation?

"A. I think that we could not have sold it for any more than that.

"Q. How do you account for that?

"A. The dry goods business is largely today a business of styles. Our line is made up of a large variety of items and the styles enter largely into the sales, and the rapid change of styles antiquate so much of our merchandise in a short length of time that there are many items that have to be sold for even less than their cost value and we have to reduce it in order to move it at all; that has been my experience; that not only applies to our dry goods but it goes into our notion department as well, the hosiery department; when hosiery was a certain color three months ago, they were using one shade, and this month another shade, and the shade that we had three months ago has become antiquated and we have to dribble it out or give it away. The same thing is true of our dry goods department. They were using large flowers like they were last season, then three months ago they turned, within thirty days and commenced using little figures and stripes; of course that antiquated the large flowers and of course we have to dispose of them at a loss.

\*   \*   \*

"Q. Now, in the deducting of the twenty per cent, did you do that arbitrarily or is that based upon a reasonable basis or a careful study of the entire stock of merchandise and arriving at it in a scientific way, as a dry goods merchant?

"A. We carry thousand of items in our stock, and it would be practically impossible to go through the stock and depreciate each item on the inventory. We

make a careful study of our stock of merchandise and arrive at what we think would be the cash value, and we decided it was twenty per cent discount from the inventory in order to arrive at the cash value of the stock at that time."

He further stated that he did not think that plaintiff's stock of goods or any other wholesale stock could be sold in bulk for cash and as a going concern for eighty per cent of its value.

Regarding the furniture and fixtures, he testified that a large part of the latter was made up of counters and bins and were constructed of used lumber taken out of a store building where plaintiff formerly carried on its business, and that they could not be sold for fifty per cent of their cost.

"Q. Then you think that five thousand dollars is every dollar that the fixtures are worth?
"A. I think they are."

The testimony of plaintiff's two other witnesses, J. E. Baker, vice-president, and C. H. Thurmond, secretary-treasurer, of the plaintiff company corroborates that of its president, J. M. Lee.

The defendants offered no evidence in support of their defense and rested their case on the testimony of plaintiff's witnesses, the value of which was not weakened though they were vigorously cross-examined.

A similar question was recently before the United States Circuit Court of Appeals for the Fifth Circuit in the case of S. G. Sample Company, Limited, vs. Commissioner of Internal Revenue, No. 5211, 23 F. (2d) 671, on the docket of that court and decided January 24, 1928. That was an appeal by S. G. Sample Company, Limited, from the action of the Commissioner in increasing its taxable income for the year

1920 $12,078.52 by adding that amount to the total amount of the Sample Company's inventory of goods on hand on December 31, 1920. That amount was twenty-five per cent of the total cost of goods shown on the Sample Company's inventory of merchandise on hand on that date, which goods were inventoried at cost less twenty-five per cent. The disallowance by the Commissioner of the deduction from cost was based on the fact that the inventory as taken did not state separately the cost and value of each item, only the cost of each item being separately stated, the twenty-five per cent deduction being made from the aggregate amount of the cost of the items thus listed, and the court held that

"the effect of the ruling in question was to deprive the petitioner (S. G. Sample Company, Limited), of the opportunity to prove by competent evidence that the market value of its stock on December 31, 1920, was 25 per cent less than the cost of that stock shown by an inventory thereof taken in the customary way."

and that

"it cannot reasonably be said that it is incapable of being proved by evidence that at a given time there has been such a change in the market value of the articles comprising a retail merchant's stock, consisting of hardware, shoes, clothing, dry goods and groceries, that the market value of the stock at that time could be arrived at with reasonable accuracy by adding to or deducting from the total cost of the stock a stated percentage of such cost."

We are of the opinion that the evidence introduced by plaintiff established its contention that the value at which it returned its property for taxation for the year 1927 was its actual cash value and that the judgment appealed from is erroneous insofar as it rejected plaintiff's demand that this value be restored to its assessment.

It is therefore ordered, adjudged, and

decreed that the judgment appealed from, insofar as it rejected plaintiff's demand that the value of $155,800.00 put upon its stock of merchandise for purposes of taxation for the year 1927 by the Louisiana Tax Commission, the Police Jury of the parish of Caddo sitting as a Board of reviewers and John W. A. Jeter as assessor of the parish of Caddo, be reduced to $146,710.72 be reversed, and that the value of said stock of merchandise for the purposes of taxation for the year 1927 be and it hereby is fixed at $146,710.72.

It is further ordered, adjudged, and decreed that in all other respects the judgment appealed from be affirmed.